Our next case is Joseph Messina v. Commissioner of Social Security Administration. Is Mr. Messina in the courtroom? Okay, thank you. And you are Attorney Lech Leitner? Lech Leitner, may you please the court? Good morning. Since Mr. Messina is not here today, the Commissioner is prepared to rest on the brief unless the court has any questions. I have a few questions about this, and that is, if you don't mind addressing them. Both the ALJ and the District Court seem to rely very much on this Dr. Druckmiller report from December 2008 and seem to characterize it as saying he doesn't really have any back problems, but that's not the way I read it. He does say there's still significant problems with his back and he may need surgery in the future. Am I wrong? Am I reading him, Dr. Druckmiller? Well, Dr. Druckmiller found very modest findings. Sensation was normal. Reflexes were normal. I think there was only mild restrictions of motions of the spine. Motor strength was normal. Gait was normal. Dr. Druckmiller did say that in the future Mr. Messina might need surgery if he doesn't improve with conservative treatment, but at the time he merely recommended conservative treatment with exercises and I believe also continued medication. He says if he fails to improve, surgery might become a consideration. I would have to include fusion given the appearance of his skin, which I assume is the MRI from Grove Hill, I think it was, right? November 2008, that MRI, yes. And in fact, I believe three years passed from the time of Dr. Druckmiller's report to Mr. Messina's which was performed by Dr. Bash, I believe in 2012. So in this case, the period under review is very, very limited. It's from May 2008 to December 2008. So the surgery, Dr. Miller's, excuse me, Dr. Druckmiller's report took place in December 2008 at the end of the DLI, the date last insured, and then three years passed and Mr. Messina finally had surgery years later. And during those three years, he was given opioids by his Dr. Figner, his general practitioner, the whole time, right? Well, if there's a condition, correct, if there's a condition that eventually becomes disabling after the relevant period, that still does not entitle a claimant to benefits, he must still show- During the relevant period, he had two steroid shots in his back by a pain specialist, right? He did, he did. But that same pain specialist noted that his pain ratings were about five, so therefore moderate rather than extreme. One point six, seven. I believe once, but I think there were several visits. Sometimes they were merely five. And she also rated his Karnofsky performance, functioning performance rating, as merely normal, either normal with slight effort or very little effort. The relationship between Dr. Belniak, who's an orthopedic surgeon, who treated him and operated on his shoulders, as I understand, but also treated him for his back, so a number of times for his back, and ordered the MRI, right? Yes. But that's Dr. Belniak's letters indicating his opinions are not even considered, are they? I didn't see Belniak's conclusions really discussed by the ALJ or the district court. Well, the ALJ did in fact notice, well, Dr. Belniak is the doctor that performed the shoulder surgery in October. He operated on him right after the accident for his back, too, right? At Grove Hill. But he ultimately referred him to the pain management specialist, Dr. Patel. So I believe Dr. Belniak primarily treated him for his shoulder impairment. But may I- You just said it. He referred him to the pain specialist for the epidural injections, right? Yes. And were the Belniak records from early on given consideration? Well, yes. So the ALJ did in fact consider Dr. Belniak's reports. He referred to them as the report of Grove Hill examiners. There were two Grove Hill examiners, Dr. Belniak and Dr. Patel. And in fact, in December 2008, Mr. Messina went to Dr. Belniak, and the doctor was asking him how he was doing. And Dr. Belniak specifically noted that Mr. Messina had refused a note because- a work note- because he stated that he was self-employed and looking for work. The only limitation mentioned by Dr. Belniak was one month earlier, which precluded Messina from doing heavy work, which again is not inconsistent with- So was it Belniak who referred him to Druckmiller, who's the neurosurgeon? No, I believe that was Dr. Patel. She's the pain specialist, right? Yes, yes. And the two people from the state of Connecticut, the two doctors who provided the evaluation, Golkar and- Husslis. Yeah. My reading of their reports is that one of them was an ER physician, and the other's an internal medicine doctor. Am I right about that? I believe they're both internal medicine specialists and ER physicians. I believe both of them have that same- They're not orthopedic surgeons, right? They're not orthopedic surgeons. However, they do have a lot of expertise in evaluating social security claimants. So while they don't have that specialty, their opinions are especially pertinent because they do have this expertise. And they specifically looked at the period under review, which again, I think it bears emphasizing, is only an eight month period. Mr. Messina has to show that he was disabled for that eight month period. Did you see him? They did not, but this court has found that the fact that a state agent's physician doesn't examine a claimant, doesn't mean that that opinion is not worth a significant weight when that opinion is supported by the evidence in the record. And here it's supported by the findings of Dr. Drucker-Miller and all the other physicians as well. And it's also supported by Mr. Messina's activities of daily living, which I want to just stress, included riding a motorcycle. And Drucker-Miller saw that one time, right? Yes. No more than that, right? I don't believe he ever went back to Dr. Drucker-Miller. But his report is significant because it took place in December 2008 at the time, maybe a week or so before his DLI. So can you just explain to me, it's kind of hard to figure out with social security law, why we are just looking at those months, I think May to December of that year. Okay, because a claimant has to have insured quarters of coverage to be entitled to disability insurance benefits. And here, he was only insured through December, the end of December 2008. He alleged disability from May 2008, so we're looking at that period and that period only. Now, if Mr. Messina ultimately wants to apply for supplemental security income, and if he has the income and resources requirements of that program, then he may still possibly be entitled to benefits under that alternative program. The December cutoff date is based on the number of quarters he had worked and paid for security. In the past, correct. That's the limitation? Yes. But would there be the requirement that your disability extends for at least 12 months? Yes. So he has to show that he was disabled at some point. His disability began in that eight month period, and that he had a disability that lasted or was expected to last for 12 months. He ultimately had surgery a couple years later for the same problem, right? Three years later. And Figner was prescribing opioids during that whole time, right? I'm not sure if it was during that whole time, but probably some of that time. But may I also add that the same doctor recommended that he exercise. That is significant. Are you disabled if you can do your job or do a job with pain medication? No, you're not a disabled. A lot of people manage the function with various medications. I'm sure many people in this room do, and they go to work. Now, there are. A little different than a leave, isn't it? That's what his treating physician was giving him for years, was prescriptions for opioids. Well, it's a prescription for opioid, yes. But nonetheless, with that medication, he still was able to ride a motorcycle. And he claimed- He had a motorcycle accident that fall. No, but he actually stated- He was able to ride a motorcycle well. Well, I do want to emphasize- But I mean, your point is he's engaged in, opioids or no, he's engaged in all kinds of activities- That's correct. That he might be able to sit at a desk and be an accountant. That's correct. That's correct. And he did say in August 2012 that he only stopped riding a motorcycle in December 2011. So he didn't stop at the time of his accident. He used the motorcycle up through December 11th, in December of 2011. And also, his job was as a restaurateur. He had two jobs, correct? One was as a restaurateur, and one was as an accountant, which was sedentary. So in this case, the ALJ found he could do light work, but usually a finding that a claimant can do light work is also a finding that he or she can do sedentary work. In this case, he had sedentary work as well. So even if he couldn't do light work, but there's evidence to support that, and the commissioner submits that there's evidence to support that- I'm not suggesting that if he's an accountant and he's on opioids, he could still do the work. Small point. Okay, thank you. Any other questions we had? I don't think so. Thank you. We'll reserve decision on this case. Thank you for answering our questions. The last case is on submission. So we'll ask the clerk to adjourn court.